UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JONNY ALEXANDER
SOLORZANO-PASTRANA,

      Petitioner,

    v.                                            Case No. 26-CV-885

DALE J. SCHMIDT, Sheriff, Dodge County,

      Respondent.

## DECISION AND ORDER GRANTING WRIT OF HABEAS CORPUS AND DISMISSING CASE

Jonny Alexander Solorzano-Pastrana, who is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Dodge County Detention Facility in Juneau, Wisconsin, seeks a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Hab. Pet., Docket # 1.) He argues that he is unlawfully detained in violation of the Immigration and Nationality Act ("INA") and his Fifth Amendment Due Process Rights and requests either a bond hearing or immediate release. (*Id.*) The government has responded in opposition. (Docket # 8; Docket # 16.) For the reasons set forth below, the petition for a writ of habeas corpus is granted.

## BACKGROUND

Solorzano-Pastrana is a citizen of Nicaragua who entered the United States without inspection in March 2022. (Hab. Pet. ¶¶ 44, 46.) After having contact with immigration officials near the border, Solorzano-Pastrana was released after several hours on his own recognizance with his wife. (*Id.* ¶ 46.) Solorzano-Pastrana timely filed an asylum application

within one year of his arrival, which remains pending. (*Id.*) Solorzano-Pastrana asserts that he complied with all check-in appointments scheduled by ICE following his release. (*Id.* ¶ 47.) Over four years after his entry into the United States, Solorzano-Pastrana was detained by Respondent at the Milwaukee ICE Field Office while attending a scheduled check-in appointment. (*Id.*) Solorzano-Pastrana remains detained at the Dodge County Detention Facility.

## ANALYSIS

Solorzano-Pastrana argues that his continued detention without bond violates both the INA and his right to due process. (Docket # 3.) I will address each argument in turn.

1.  *Violation of the INA*

    1.1    Statutory Framework

Both 8 U.S.C. §§ 1225 and 1226 cover civil detention of noncitizens pending removal proceedings. Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." Subsection (a) concerns "inspection" and provides that all "aliens (including alien crewmen) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers." 8 U.S.C. § 1225(a)(3). The section defines an "applicant for admission" as an "alien present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1).

Subsection (b) of § 1225 covers "inspection of applicants for admission" and provides for mandatory detention and expedited removal proceedings for certain types of applicants. Generally, noncitizens deemed inadmissible due to fraud or documentation issues are removed without further hearing unless the noncitizen indicates an intention to apply for

2

asylum or a fear of persecution. 8 U.S.C. § 1225(b)(1)(A)(i). Pursuant to § 1225(b)(1), if the noncitizen applies for asylum or a fear of persecution, they are referred for an asylum interview. § 1225(b)(1)(A)(ii). If the examining officer determines that the noncitizen has a credible fear of persecution, the noncitizen "shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). If the noncitizen is not found to have a credible fear of persecution, the noncitizen "shall be detained" until removed. § 1225(b)(1)(B)(iii)(IV). As relevant here, § 1225(b)(2) is broader and "applies to all applicants for admission not covered by § 1225(b)(1)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). The statute provides:

> Subject to paragraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal proceeding].

§ 1225(b)(2)(A). In short, § 1225 provides for mandatory detention and expedited removal proceedings for applicants for admission seeking entry into the United States. *Jennings*, 583 U.S. at 289.

Section 1226 is titled "Apprehension and detention of aliens." 8 U.S.C. § 1226. Subsection (a) states:

> (a) Arrest, detention, and release
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>
> > (1) may continue to detain the arrested alien; and
> >
> > (2) may release the alien on --
> >
> > > (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> > >
> > > (B) conditional parole; but

> (3) may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

8 U.S.C. § 1226(a). In sum, § 1226(a) allows the Attorney General to issue warrants for the arrest and detention of noncitizens pending a decision on their removability and to either continue the detention of the arrested noncitizen or release them on bond or parole. *See id*. Section 1226(b) provides that the Attorney General, at any time, may revoke a bond or parole granted under subsection (a), rearrest the noncitizen under the original warrant, and detain the noncitizen. § 1226(b).

Finally, § 1226(c) requires that the Attorney General take into custody noncitizens who are inadmissible or subject to removal for a variety of criminal offenses. Recently this section was amended by the Laken Riley Act to require the detention of noncitizens arrested for any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer as well as any crime that results in death or serious bodily injury to another person. *See* § 1226(c)(1)(E)(ii). Noncitizens who are subject to mandatory detention under this section may only be paroled or released for witness protection purposes. § 1226(c)(4).

### 1.2 Application to this Case

Solorzano-Pastrana's habeas petition stems from the Board of Immigration Appeals' decision in *Matter of Hurtado*, 29 I. & N. Dec. 216, 2025 BIA LEXIS 44, 2025 LX 553980, which reversed the longstanding understanding that noncitizens residing in the United States were entitled to bond hearings under 8 U.S.C. § 1226. Solorzano-Pastrana, like many others currently coming before the courts on habeas review, has not been afforded a bond hearing.

4

Solorzano-Pastrana's petition raises a question that has inundated courts since *Matter of Hurtado* was issued—are petitioners like Solorzano-Pastrana, who has been present in the United States for years, entitled to the discretionary detention authority of 8 U.S.C. § 1226(a), or do they fall under 8 U.S.C. § 1225(b)(2)(A)'s mandatory detention provision, which applies to noncitizens "seeking admission" into the country? This question has divided courts around the country. Two circuit courts of appeals, the Eighth and Fifth Circuits, have concluded that petitioners such as Solorzano-Pastrana fall under § 1225(b)(2)(A) and are subject to mandatory detention. *See Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). Three others, however, the Second, Eleventh, and Sixth Circuits, have determined that such petitioners are subject to § 1226(a) and are entitled to a bond hearing. *See Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258 (11th Cir. 2026); *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026).

Courts within this district have examined this issue and come to varying conclusions. *See, e.g.*, *Ramirez Valverde v. Olson*, No. 25-CV-1502-BBC, 2025 WL 3022700 (E.D. Wis. Oct. 29, 2025) (concluding petitioner was subject to § 1226(a)); *Cirrus Rojas v. Olson*, No. 25-CV-1437-BHL, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025) (finding petitioner was subject to § 1225(b)(2)(A)); *Ugarte-Arenas v. Olson*, No. 25-CV-1721-WCG, 2025 WL 3514451 (E.D. Wis. Dec. 8, 2025) (concluding petitioner was subject to § 1225(b)(2)(A)); *Morales Mejia v. Mullin*, No. 26-CV-515-LA, 2026 WL 973041 (E.D. Wis. Apr. 10, 2026) (finding petitioner was subject to § 1226(a)). This Court, having previously addressed the issue, concluded that petitioner fell under § 1226(a) and was entitled to a bond hearing. *See Hernandez Herrera v. Olson*, No. 25-CV-1994-NJ (E.D. Wis. Jan. 28, 2026). The Seventh Circuit has yet to issue a

majority opinion on this matter. *See Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 175 F.4th 828 (7th Cir. 2026).

While acknowledging that this Court has previously found that noncitizens residing in the United States were not "aliens seeking admission" under § 1225(b)(2)(A), Respondent requests that the Court "reconsider its interpretation of 8 U.S.C. § 1225(b)(2)(A)" based on the Seventh Circuit's recent inconclusive holding in *Castañon-Nava*. (Docket # 8 at 7.)

At the time *Hernandez Herrera* was decided, a Seventh Circuit motions panel issued a preliminary decision in *Castañon-Nava v. U.S. Department of Homeland Security*, 161 F.4th 1048 (7th Cir. 2025), in which it granted in part and denied in part a motion by the government to stay a district court class action ruling enforcing a consent decree pending appeal. As part of its analysis, the panel addressed the government's likelihood of success on a number of issues, including whether § 1225(b)(2)(A) "covers any noncitizen who is unlawfully already in the United States as well as those who present themselves at its borders." *Id.* at 1060. A majority of the panel concluded that the government did not have a likelihood of success on the merits on this issue, preliminarily agreeing that an "applicant for admission" must mean something different that a noncitizen "seeking admission." *Id.* at 1061. The court further reasoned that "the difference in treatment between a noncitizen at the border and one already in the United States fits within the broader context of our immigration law." *Id.* While I acknowledged that *Castañon-Nava* was nonbinding authority, I agreed with the Seventh Circuit's rationale and accorded its reasoning substantial weight. (Docket # 10 in Case No. 25-CV-1994-NJ.)

Subsequent to *Hernandez Herrera*, the Seventh Circuit took up *Castañon-Nava* again after receiving full briefing and oral argument. The three-judge panel did not reach a majority

decision on the issue of § 1225(b)(2)(A)'s application to noncitizens already in the country.

Judge Lee, distinguishing the findings of the Eighth and Fifth Circuits, concluded that:

> [T]he text, statutory context, legislative history, and long-standing Executive practice all confirm that § 1225(b)(2)(A) applies to "applicants for admission" who are seeking lawful entry at the border or ports of entry and not to noncitizens unlawfully living in the country's interior. Given the statute's history, it is unreasonable to think that Congress in 1996 intended to subject millions of noncitizens to mandatory detention in the oblique, off-handed fashion that Defendants claim. Thus, Defendants lacked the authority in the first instance to place the individuals at issue, all of whom were already within the United States, under mandatory detention pursuant to § 1225(b)(2)(A).

*Castañon-Nava*, 175 F.4d at 856. Judge Pryor declined to reach the merits of the issue. *Id.* at 587. Judge Kirsch, however, concluded that:

> [T]he best reading of § 1225(b)(2)(A) is that . . . it covers all applicants for admission, including those who have reached the interior of the United States without having gained lawful entry into the country. Had Congress wanted to grant different treatment to those illegally inside the country as compared to those encountered at the border, it could have done so. Section 1225(b)(2)(A) draws no such distinction. That means all applicants for admission must be detained if they are not entitled to admission.

*Id.* at 875. Considering Respondent's arguments and the intervening authority, I see no reason to reconsider my interpretation of § 1225(b)(2)(A). Both Respondent and *Castañon-Nava*'s dissent assert that the phrase "applicant for admission" is synonymous with "seeking admission." (Docket # 8 at 8; *Castañon-Nava*, 175 F.4d at 872–74.) This reasoning is unpersuasive. Section 1225(b)(2)(A) states that "an applicant for admission" "shall be detained" if "the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted[.]" § 1225(b)(2)(A) (emphasis added). Both "admission" and "admitted" mean "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." § 1101(a)(13)(A). By using the phrase "seeking admission," Congress limited § 1225(b)(2)(A) to a category of noncitizens

actively "seeking" "lawful entry" into the United States. If Congress intended the detention provision to apply to all noncitizens irrespective of whether they are actively seeking lawful entry, why introduce the phrase "seeking admission" at all? Why take care to define the phrase "applicant for admission" to use different terminology later in the statute? Congress must have intended the two phrases to have distinct meanings.

Further, a cardinal rule of statutory interpretation is that "every clause and word of a statute should have meaning." *Castañon-Nava*, 161 F.4th at 1061 (citing *United States ex rel. Polansky v. Exec Health Res., Inc.*, 599 U.S. 419, 432 (2023)). Treating "applicant for admission" as synonymous with "seeking admission" would violate this basic principle and render Congress' use of the term "seeking" superfluous. This construction also fits within the broader context of § 1225. For instance, the statute's title refers to "inspection" and "expedited removal of inadmissible arriving aliens." There are also repeated references to noncitizens effecting an entry into the country. *See* 8 U.S.C. § 1225(b)(1)(A)(i) (establishing inspection for noncitizens "arriving in the United States"); § 1225(b)(2)(C) ("Treatment of aliens arriving from contiguous territory"); § 1225(d)(1), (2) (authorizing immigration officers to search "any vessel, aircraft, railway car, or other conveyance or vehicle in which they believe aliens are being brought to the United States"). Again, by using the present tense and referencing modes of transportation, Congress appears to direct this section to noncitizens actively arriving into the United States at the border or a port of entry. *See also Jennings*, 583 U.S. at 289. The reference and exceptions for individuals that are "stowaway[s]" or "crewmen" similarly implies that § 1225 was designed to pertain to noncitizens actively seeking entry into the United States.

Respondent further argues that Congress enacted §§ 1225 and 1226 with the passage of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") to eliminate the discrepancy between the benefits awarded to noncitizens arrested within the interior of the United States with those who lawfully present themselves at the border for entry. (Docket # 8 at 8–9.) According to Respondent, Congress intended to replace certain aspects of the "entry doctrine" under which illegal aliens who have entered the United States without inspection gain equities and privileges in immigration proceedings that are not available to noncitizens who present themselves for inspection at a port of entry. (*Id.* at 9.)

Respondent, however, fails to identify the statutory history where Congress intended to subject the two categories of noncitizens to the same system of detention. *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *11–12 (N.D. Cal. Sept. 12, 2025) (finding no indication Congress disrupted the "existing [detention] regime by subjecting *all* inadmissible noncitizens to mandatory detention, a seismic shift" in the longstanding practice of "discretionary release under § 1226(a), which Congress did not change"). Moreover, for decades the executive branch has interpreted the statutory scheme as granting noncitizens like Solorzano-Pastrana a system for discretionary release. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."). Only recently has the executive changed tune. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

9

Solorzano-Pastrana entered the United States without inspection in March 2022 and has resided in the country ever since. As such, at the moment he was arrested and detained four years later, he cannot be said to have been seeking lawful entry into the United States. Thus, in accordance with the courts that have already addressed this issue, I conclude § 1225(b)(2)(A) does not apply to noncitizens like Solorzano-Pastrana who already reside within the United States and are far removed from seeking admission into the country. Accordingly, because § 1225(b)(2)(A) does not apply to Solorzano-Pastrana, he is entitled to a bond hearing under § 1226(a).

2. *Due Process*

Because I find Solorzano-Pastrana's detention under 8 U.S.C. § 1225(b)(2)(A) violates the INA, I do not address whether his continued detention violates due process.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Solorzano-Pastrana's petition for a writ of habeas corpus (Docket # 1) is **GRANTED**. Within **five (5) business days** of this order, respondent must either: (1) provide Solorzano-Pastrana with a bond hearing before an Immigration Judge, at which the government shall bear the burden of proving danger and flight risk by clear and convincing evidence, or (2) release Solorzano-Pastrana from custody under reasonable conditions of supervision.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 30th day of June, 2026.

BY THE COURT

NANCY JOSEPH
United States Magistrate Judge

11